Good morning, Your Honors. May it please the Court, my name is Ramzi Nasser and I represent Stephen Joseph Flores who is currently serving a 36-month mandatory minimum sentence for alien smuggling after an unfair trial where the most significant evidence in his favor that the co-defendants said he didn't know about the aliens was excluded in violation of his right to present a defense and also the federal rules of evidence and also where it became Well, that's not what the testimony would have shown anyway. What the testimony that you're complaining about would have shown is that his wife said she would have said that she lied to him. And we don't know what she would have said she lied to him about either. Your Honor Do we? So it's not exactly correct that the testimony would have shown he didn't know what he was doing. Your Honor, I would expect It might have gone toward helping show that, but it wouldn't have shown it. Your Honor, I would respectfully disagree with that. I know that that was the testimony that came out during cross-examination that was later struck. However, what was before the Court was a proffer about what it is that would have been said had the defense been allowed to present this in its own case in chief. The defense did call the cases and try to elicit what was said. In the proffer statements, the government said specifically, and this is in their supplemental Exeter record that, and this is a quote, she said her husband asked her if the two people were legal, and she said that they were. And that's what the government put in its statement of facts when it submitted a brief to the Court regarding what it was that would have come out. Further, the complaint is also a part of the Exeter of the record, and that's on two. And there again it says that she stated that the defendant asked her if the two people were legal, and the co-defendant told him that they were. So I think it's really clear that what would have come out is that she lied about the status. And that's our chief complaint in this case, that that wasn't allowed to be presented to the jury. That and the inadmissible hearsay evidence that was used against him from those two witnesses whose connection to the conspiracy was not at all established. Regarding the exclusion of this highly, highly exculpatory evidence, there was extensive, extensive corroboration, much more corroboration that has been provided in other cases where exclusion has been called barbarous by this court in Puglio, or a violation of constitutional rights like it was in slaughter. Just an example of the corroboration that was offered below in the proffers and in the testimony, Nicole is the person who talked to the mother, allegedly, at the airport, so it shows that she's the one who's primarily connected to the case. Nicole's the one who approached Emilio Aragon and said, are you Emilio, when she went to go pick up the second material witness. Mr. Flores testified that there was a spontaneous statement that he made when the aliens stopped speaking. And if you'll excuse my language, Nicole started saying, I'm sorry, I'm sorry, when the aliens didn't present their papers. And he looked back at her and said, you just fucked me, is what he said. And that wasn't the only place, it wasn't just from his testimony. We also called below the case agent, and the case agent recounted that Ms. Flores also said in recounting what happened just after the arrest, that she said to him, I'm sorry, I'm sorry, and Mr. Flores responded, you just fucked me. Mr. Flores testified himself that she lied to him. Mr. Flores reported that she came into the office afterwards saying, I'm sorry, I'm sorry, it's not his fault, trying to tell the agents when they were first taken in. And the district court struck that also. So the jury didn't get to consider that. In addition, Victoria Arguello is the one. You know, most of the problem with all of that is, you know, most of that came in. I mean, almost all of it came in. The only thing that didn't come in was the, I lied to him. Okay. So you could argue all of that stuff. I don't think that's true, Your Honor. Respectfully, it didn't come in that she said he didn't know. There's no place at all where that came in. I said that's the only statement that didn't come in. All of the rest of it did. And you could argue from all of the rest of the evidence that it showed that she did it and he didn't. The problem is that it goes to show that it may have been her idea, she may have been the one who did all the legwork, she may have been the one who did all sorts of stuff, but he went across the border driving, what, two or two and a half hours to pick up two people that he didn't know at a place, at a location, one of which he arranged and had to have told her about, because she's the one who got out of the car and went over to pick up Aragon. He drove back across the border and for reasons which nobody can explain put out his badge going through the checkpoint. Anybody who didn't have a consciousness of guilt in his right mind wouldn't have done that. It's a totally unnecessary thing to do. So based on all that, why isn't it, even if there were error, perfectly harmless? Your Honor, several reasons. I would dispute a lot of the things in the recounting of facts, respectfully. He had his driver's license in his wallet. It was part of his ID, so there was an explanation of that. What I would dispute most highly is the idea that he arranged this with the material witness the day before. That was a hearsay statement that came in with absolutely no corroboration and I think is another grounds for reversal in this case. He presented an alibi saying that he was at Ruby's on the beach in Huntington Beach when that was supposed to happen. At 3 o'clock. Doesn't say he couldn't have gone later. Well, the government presented evidence that he was at work from 8 a.m. to 4 a.m. You know how far away it is, so he basically has an alibi until 3 o'clock and then again until 8 p.m. So I think it's highly doubtful that that happened, but even if it wasn't, it's ultimately going to be a jury question. He's entitled to his right to present a defense. In every single case where this court has found that this kind of thing violated a defendant's constitutional rights, there has been evidence both ways. There's been evidence to the contrary. In slaughter, you had the contested declaration was whether the informant did cocaine or not. And you had direct testimony from the informant saying under oath, I didn't do cocaine and she was subject to cross-examination. Nonetheless, this court still reversed because it went to the heart of the entrapment defense and the defendant was entitled to present his defense to the jury. I would say the same for Puguio where they said that there was significant evidence that went both ways. Nonetheless, they still reversed and they called what happened barbarous. And this particular case has many more indicia of reliability than in any of those cases. This was something that was said to officers after being given Miranda warnings and it was actually given to the agents. It wasn't a situation like Puguio where the person simply made the statement and gave it to defense many months after. This is something that happened right away. So this is something that is much more significant and has to be a jury question. And the judge below erred. And you can tell by looking at his order which the government put in their supplemental excerpt of record. His order says that the factor that needs to be considered is the relationship between the two parties, the husband and the wife. Well, Puguio specifically says that that's not a factor. And this court has a four-factor test that it's established through Orpezu, Hoyos, and several subsequent cases. And the relationship between the parties and that relationship and how it may have biased things is a question for the jury. It says right in Puguio. And it's air for the judge to take it away based on just his feeling that it wasn't probably true. So I think that all the case law significantly makes this court have to reverse. That would be my position. And I think this is also true for the next issue that I want to talk about, which is the fact that an admission of a party opponent, supposedly, was offered against my client with absolutely no independent corroboration outside the statement whatsoever. This happened in two instances, first with Lydia Guevara talking about what her mother said to Nicole Flores. And what the government was able to put in was that they discussed the arrangement, this mother, Lydia Guevara's mother, whose name we don't even know, and also that the mother said, I'm going to wait over there to pay. There's absolutely no independent corroboration at all that this happened. The government tries to talk about how the mother traveled in a plane with her from a ways south of Mexico up to Tijuana. Well, I think that under Silverman and Cardenas and a whole host of cases, it's not enough to simply be there. She can't just by being on the plane necessarily show that she's in a conspiracy. The actual declarant, Ms. Guevara, maybe there was evidence of a conspiracy between Nicole and my client, perhaps, but there was certainly no evidence whatsoever that there was a conspiracy between this declarant. And also, I think significantly, the declarant stated the, I think it's very significant that the declarant stated that her mother, her mother, brother, and father were all there with her. So to the extent that it's a reasonable inference that whoever came with her was going to arrange what happened, I don't think that that's reason enough to think that it was found. And I think this is even more true with Emilio Aragon. And the court actually has a written order about this topic. Emilio Aragon stated, there's this man, Mr. Pena, that I met at a bar. And Mr. Pena told me, Stephen Flores, not actually saying his name, but saying that man right there, he's the one who's going to cross you. And this was totally contrary to my client's testimony. And it was very damning evidence suggesting that he knew about this way ahead of time. Well, it's Mr. Flores' position to this day that this is not true and that he was duped into this, but he never got to cross-examine Mr. Pena. And there was no independent corroboration at all, as is required under the law, the rules of evidence, the Confrontation Clause that suggested that the declarant, Mr. Pena, was in a conspiracy with my client. There was none whatsoever. And the judge's written order says, well, Mr. Pena first told him we're going to go to this bar. And then he subsequently went to the bar. And that's where he said, this is the man that's going to drive you. But it says very clearly in Silverman that you can't use two of these conspirator hearsay statements to corroborate each other. I think that reversal is also required. The fact that Flores ended up picking Aragon up at the anointed place, doesn't go anywhere? No, because I think that suggests there's a conspiracy between Aragon and my client. What we need under the rules of evidence and the advisory committee notes in Silverman is some connection between the declarant and my client. That may show that he's in a conspiracy with this material witness. But the question is, is there a declarant who's also in the conspiracy? I want to add that I think that also excluding the statement of the coworker of Nicole also significantly prejudiced him for the same reasons that excluding Nicole's statement did. And I want to reserve the rest of my time for rebuttal. Certainly. May it please the Court, Mark Rahe for the United States. Your Honors, the defendant in this case did receive a fair trial, and the exclusion of the one statement of his wife was not reversible error. In this case, abuse of discretion standard does not apply to the defendant. Well, it's certainly possible to make mistakes after long consideration. We do it occasionally. But I would like you to assume for the sake of this question that it was error to exclude the wife's statement. And I know you don't concede that, but I'd like you to assume it for the moment. What is your best shot at a harmless error argument? Assuming that it was error, was the error harmless? I do believe it was harmless, Your Honor. And first off, as we noted in our papers, this was the only statement that was excluded. The defense tries to create this impression that they were somehow precluded from making a defense of third-party culpability without this one statement, but that's not true. And as we set forth in our brief on pages 45 to 46, there was a whole slew of other evidence that the defense was still able to elicit. Most importantly, one, that Nicole Flores admitted knowledge that the aliens were undocumented after the arrest. Two, as defense counsel alluded earlier, they were able to elicit evidence that at the moment of referral, or after referral to the secretary, the wife started crying and saying, I'm sorry, and I'm sorry. There was evidence that in the secondary inspection office, she said the same things. And as he said, there was testimony elicited that she had made these arrangements with, as far as bringing these aliens in. The prosecution never objected, never made any objection that the defense shouldn't be able to argue third-party culpability, nor did the district court. In fact, the district court expressly invited the defense to make this argument, and that's in excerpts of record 439. On that record, as Judge Ryder pointed out, the defense was certainly free to argue. That was the natural, that was the logical inference they could have elicited from all this evidence was, look, here's my wife. I'm Stephen Flores. I've testified that I went down to Mexico just at her behest to pick up these prints. And they were able to elicit testimony that she told me that they had papers. And then all this other evidence comes in that she's crying, she's saying, I'm sorry. On that record, I believe it is harmless. Yeah, but what, doesn't it make quite a bit of difference if she says, and he didn't know anything about it? I don't think so in the whole slew of things. Oh, I do. I, why is it that the, that it wasn't error to grant the severance and, and try him first? So you, you give him the relief, the Bruton issue and all of that that was discussed. And if she has no defense, right? Well, I don't know about that. According to her counsel, she was prepared to make a vigorous defense to deny the truth of all these statements. And that she was, and that his, she was also defended by a gentleman, Bill Braniff. He used to be the U.S. attorney for our district. He's no lightweight. He wasn't going to let her go up there and just fall on the sword and everything. He even made, I mean, when we, if we're bringing up the issue of the severance, the Court never, never granted the severance for the purpose of facilitating her testimony. Up until the time the Court granted the severance, the Court stated in 17 years, I think, he'd never given a severance before. There was no argument whatsoever about any possible testimony she would give. It was solely about redaction. Every other reference is to redaction. The district court says, because you can't redact properly and I appreciate the government's efforts, I'm going to grant severance. Now let's talk about the issue of the order. It was at that point that the defense first starts talking about, well, there's a chance that the wife might, you know, we might be able to elicit favorable testimony, but I don't think the Court abused its discretion. There was never any indication by her counsel that she would do so. In fact, he stated on the record that he would advise her to do so. Well, the judge cut that off. I mean, her counsel said she will testify to this later, and then the judge made the decision before he ever heard any pro fer of what it was that she would say, right? I don't recall anything about him saying that she will testify to this or what this necessarily meant. I mean, the notes that I have is that he stated that, and this is excerpts of record 50, her lawyer vigorously resisted the suggestion that if the trial went through, she would testify at defendant's trial. Excerpt of record 51, her lawyer said he would advise her to take the Fifth Amendment at the defendant's trial. And in excerpts of record 45 through 47, her lawyer indicated that Nicole's   And I'm not sure that that's what the case stated. Well, wasn't the reason that the order went the way it was is because there was a fear by the government that a witness, a material witness, would leave the area? Correct. But that has nothing to do with the substance of the wife's testimony. Well, but you could have resolved that problem simply by invoking Rule 15a of the defense never moved for that. They have never contested that the reasons that the district court gave for severance, that there was a problem with material witness was invalid. I mean, we could sit here and argue what should have happened, what might have happened, but the question is, what the judge did, was it an abuse of discretion? Well, what should have happened is he should have got a fair trial, and that's what the question is. When you keep him from presenting the principal part of his defense and then you allow into evidence inadmissible hearsay, uncorroborated hearsay, and error in law in the course of the ruling on one of those issues, is that a fair trial? Isn't that what the question is? Well, if that was in fact the case, of course that would be a fair trial, Your Honor. But we resist, we strongly disagree with any implication that hearsay, and I guess now we'll talk about the hearsay of the material witnesses, was improperly admitted. And first of all, I know there's a lot of emphasis as to corroboration of that statement. I believe under Bourjali, the U.S. Supreme Court case, corroboration isn't an issue when you talk about a co-conspirator statement. In fact, the Court expressly held, once hearsay comes within a clearly, a well-settled exception to hearsay rule, that's the end of the inquiry. So the question for the co-conspirator exception is whether the government has laid a sufficient foundation. And the defense counsel doesn't talk about how those rules are not very strict. I mean, you only have to show an establishment of a conspiracy by preponderance. That can be shown by purely circumstantial evidence. The Portak case shows that a mere concert of action is enough to show a conspiracy. And then when all is said and done, once you establish a conspiracy, you only need to establish a slight connection between the defendant and that conspiracy. So when we talk about the material witness statement, it's improperly admitted under the co-conspirator rule. I mean, as this Court has also made clear, when you look at the foundation, the district court can vary the order of proof on that. And when we looked at the whole record here, there was sufficient foundation. I mean, we have testimony by both material witnesses. I mean, there's no dispute that they were undocumented. That they came to Tijuana that day, or around that time frame, early part of June of 2002, to get passage to the United States. The wife, she admits knowledge post-arrest. She's definitely a participant. Stephen Flores, I mean, there was ample evidence. It's not just a question of distinguishing this case from for a while. There was evidence in the record that he had affirmative knowledge. Lydia Guevara, one material witness, testified that on the way, while they were in line at the border, she told the defendant, I'm in the process of getting documents and of fixing documents. That obviously means she didn't have documents yet. Emilio Aragon testified that three days before the date of arrest, he saw the defendant at a bar in Tijuana. That's his visual observation. That's not a hearsay statement. And yet, that is significant, circumstantial evidence that Stephen Flores was involved in this conspiracy. And finally, after he's notified that he's being referred to secondary, he hangs his head and says, I'm screwed. I mean, if that's not evidence of consciousness of guilt, I don't know what is. The district court properly took all of those facts into consideration. They're set forth in detail, in its written order, saying that this is sufficient evidence by preponderance to show a conspiracy. And there's another factual error, I believe, that needs to be clarified. I've noticed from defendants' recent filings and from some of their comments, the two issues about financial gain. These statements were not made by Liddy Guarara's mother. They were made by Nicole Flores to Liddy Guarara's mother. There's no doubt that Nicole Flores was a member of this conspiracy because she admitted knowledge post-arrest. And when you look at the concert of action here, this wasn't a conspiracy that took place over years or months. This all came together in a very short period of time. The defendant picks up his wife at Costa Mesa, at her hotel, that Saturday morning, drives down to the border. First stop is at the airport. Liddy Guarara's mother accompanied her on that trip. It's testimony that she was seen talking to Nicole Flores. Immediately thereafter, Liddy Guarara gets into the vehicle with the Flores. Did they go in for tacos or to go do some tourism in Tijuana? No, they proceed directly to the Plaza Pueblo Amigo Hotel, which is where Emilio Aragon testified he had been told that he would be picked up. And sure enough, they pick up Mr. Aragon. From there, do they go off on a little detour, do some tourism? No, they go straight to the border. It's all seriatim, it's one step after another, there's no delay. And in fact, there was also testimony that during the wait in line, there wasn't any real conversation between the people. And yet, the defendant's whole alibi was that these were friends of his wife. It's very ironic or very strange that in that entire time, there was no conversation at all. All of those facts taken together, Your Honor, gave this district court sufficient basis to find the existence of a conspiracy by concerted action. If that is in fact true, then all we do is look to these two statements. One of them by Emilio Aragon, he claimed that Mr. Pena told him, defendant is the man who will be picking you up at the Plaza Pueblo Amigo Hotel. That's clearly in furtherance of the conspiracy. The other two statements, as I noted, were by Nicole Flores to Liddy Guevara's mom. Talking about one, how much was it going to be, and talking about two, that she would wait for her to pay her when she was over there, by which she presumably meant when she arrived in the United States. Again, substance of that, those statements clearly goes to the furtherance of the conspiracy, because you're talking about payment for a woman who's clearly undocumented and is then detained at the border. On that record, at least as far as the third issue, I believe there was no abuse of discretion. And it also is important to keep in mind that the standard review is clear error on that existence of the conspiracy. Given all that evidence that the district court gave ample consideration to, I don't see how it can be credibly maintained that that was clear error. But to return to the second issue, and I know Judge Graber asked me a while ago, to assume that it was error to exclude that statement, I'd actually, now, I mean, I want to reiterate why we don't think it was error. And I know that the defendant talked about a four-factor test, and yes, this court's jurisprudence refers to that. It's no indication that that's the exclusive test. In fact, the plain language of 804B3 states that whenever a statement is offered to exculpate the accused in corroborating circumstances, it must clearly indicate the trustworthiness. The district court set forth four specific reasons for why he was exercising his discretion as he did. The first is that her statement was made after arrest. Now, I know the defense tries to say, well, that actually works in their favor, because it was made after Miranda's statements. But this court has held in the Horace and the Ospina cases that the fact, or Oropisa cases, that the fact that a statement is made after arrest when a person knows that the, you know, the gig is up, they've been caught, that counts against their, the trustworthiness of the statement. And the second thing is, the fact that she was the wife of the defendant is very much relevant. I know that my opponent stated that that's something that Pugliese said didn't matter. I would strongly disagree. At 114F3, page 933, this is a short and direct quote. There is one factor that cuts against the trustworthiness of the father's statement, and that is that the appellant is his son. So clearly, this court has found that familial ties are relevant to this inquiry. But they allowed the statement in in Pugliese. Correct. And that's fine, too, because it shows that all of these cases turn on their own facts. I mean, the result in Pugliese was for the defendant, but then that's the next point I'll talk about. That's because the facts there did clearly, it did have a level of corroboration that wasn't present here. In this case, the defense points to all the statements that Nicole Flores made that inculcated herself. Well, that just shows that she was guilty. We never denied that. In fact, it was through our agent that the fact that she had confessed was elicited. But you have to look at the statement, which was that I lied to my husband. There has to be specific corroboration of that statement. In the Pugliese case, that was a fraudulent loan transaction case. And when Pugliese Jr. was on trial, the statement that was excluded was from the father. Again, just one discreet statement that he, the son, had nothing to do with it. Now, what corroboration was there for that time? The form, the 1099 form that was used in that transaction was printed out by the father. Testimony showed that the father walked the document through the relevant process. The tax preparer, the escrow agent, and a loan officer all testified that their only dealings were with the father, not the son. Evidence also came out that those same three people, they have prior business relations with the father, but not the son. It was for those reasons that this court found there was corroboration, sufficient corroboration of the exact specific statement that the son had nothing to do with it. Because that evidence showed the father's involvement mutually exclusive of the son. In this case, just to say that somebody, you know, the statements that she lied to her husband, and then to point to the things that she admitted knowledge, they could both be guilty. None of her statements ever were mutually exclusive of her husband's involvement. And as Judge Reimer pointed out, just the statement that she lied to her husband, I mean, it didn't go any more specific to that as to what it was exactly that she had lied about. So for those reasons, we do believe that this case is sufficiently distinguished from Cabrillo. And unless this Court has any further questions, we would submit. I'll take no further questions, thank you. Mr. Nassar. Your Honor, first, I just want to talk about the hearsay statement of Lydia Guevara's mother. This all came out on page 221 and 222 of the excerpt of record, and it's a very interesting statement. It was, indeed, a statement by Lydia Guevara's mother. The question was, what did the lady tell your mother about the arrangement? And the answer was, from Lydia Guevara, that she would wait for her over there to pay her. But then the Court, knowing it was ambiguous, said, when you say she, who do you mean? And she said, I meant my mother. This was a statement by the mother. And the Court even found, in its denial of Rule 29, that it was the mother's opinion that saved this from being a Rule 29 on the issue of financial gain. So this is a clearly prejudicial statement, and it is, in fact, the hearsay of the mother, not of Nicole Flores. In regards to the law and the way that it applies, Mr. Rahe talks about a lot of different ways that you can tell that this is a conspiracy. And I think that's true. They can't point to evidence that there is a conspiracy, but he's missing two important facts that are stated right in the rule. And what that says is that the corroboration has to be independent of the statement, and also that the corroboration has to show a conspiracy between the declarant and the conspiracy. So, sure, there may have been a lot of evidence of a conspiracy, but how do you know that this person, Mr. Pena, who the material witness said he didn't know his address, he didn't know his phone number, he just often saw him at a bar, we obviously have no way to find him or question him, how do you know that he's a part of the conspiracy? And the only way that you know is the fact of what he said. There's nothing independent of the statement. Sure, he says that he saw him at a bar, and maybe that's circumstantial evidence, but I think that Silverman is very clear that simply being someplace with somebody else does not a conspiracy make, and doesn't prove a conspiracy. So this is wholly uncorroborated hearsay evidence that came in against my client. It was highly prejudicial. In regard to this being harmless error, this is a constitutional issue, and they'd have to show that it was harmless beyond a reasonable doubt, and it does have to be shown de novo. Mr. Flores maintains his innocence to this day. He told a story, I encourage your honors to reread his testimony if you are troubled as to the harmfulness of this, and he tried to explain what happened, and he maintains his innocence. His wife told him these were friends of friends. He went with her, he tried to inquire some more, but she told him that he was being bossy, and he just sort of clammed up. He showed his ID, and his badge and his ID were together. That's his story, and that's what the jury should have decided on. They should have known that Nicole admitted that she lied to him, and without that, he didn't ever get that chance to have his fair trial, and he really wants that fair trial and urges this Court to give it to him. Thank you, counsel. The matter just argued will be submitted, and we'll next hear Tolentino.
judges: Rymer, Graber, Molloy